IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LASHAWNDA RUFFIN, *et al.*, | : |
| Plaintiffs, | : |
| vs. | : CIVIL ACTION NO. 18-00231-KD-B |
| WILLIAM EDWARD CLARK, *et al.*, | : |
| Defendants. | : |

**REPORT AND RECOMMENDATION**

This case is before the Court on Plaintiff Casey Evans' motion to remand. (Doc. 6). The motion, which has been fully briefed and is ripe for resolution, has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(S). Upon consideration of all matters presented, the undersigned RECOMMENDS, for the reasons stated herein, that Plaintiff's motion to remand (Doc. 6) be **GRANTED**.

   **I.  Background.**

This personal injury litigation arises from a February 21, 2017, motor vehicle accident on Highway 10 in Choctaw County, Alabama. Plaintiffs Lashawnda Ruffin ("Ruffin") and Casey Evans ("Evans") commenced this action by filing a complaint in the Circuit Court of Choctaw County, Alabama on October 5, 2017. (Doc. 1-1 at 2). Plaintiffs allege that William Edward Clark ("Clark"), while driving eastbound on Highway 10 behind Ruffin's vehicle, was

distracted and did not stop in time, and as a result, he "negligently and/or wantonly" collided with Ruffin's vehicle, and thereby caused Ruffin's vehicle to strike the driver's side of Evans' vehicle, which was traveling in the opposite direction. (Id. at 3). Plaintiffs further allege that at the time of the accident, Clark was acting in the line and scope of his employment with Kinder Morgan, Inc. ("Kinder Morgan"). (Id.).

In their complaint, Plaintiffs also allege:

> Due to the negligence and/or wantonness of Defendant Clark and Defendant Kinder Morgan, Plaintiffs Ruffin and Evans suffered the following injures [sic]:
>
> a.  Injuries to the back, head, hip, arm and body as a whole;
> b.  Cuts and bruises all over their bodies;
> c.  Past and future pain and suffering;
> d.  Past and future mental anguish;
> e.  Past and future medical expenses; and,
> f.  Past and future loss [sic] wages.

(Id.). While Plaintiffs list various categories of damages in their complaint, they do not specify the amount of their damages. (Id.).

Plaintiffs also asserted uninsured and/or underinsured motorist claims against their respective insurance carriers, State Farm Mutual Automobile Insurance Company ("State Farm") and ALFA Mutual Insurance Company ("ALFA"). (Id. at 4-6). Both insurers exercised their rights under Alabama law to opt out of the

2

litigation. Once State Farm and ALFA opted out of the litigation, they became nominal parties whose citizenship could be disregarded for purposes of diversity jurisdiction analysis and who were not required to join in a removal of the case to federal court. See Wilson v. Chester Bross Constr. Co., 2011 U.S. Dist. LEXIS 40265, at *29, 2011 WL 1380052, at *10 (S.D. Ala. Apr. 12, 2011); Oliver v. Rodriguez, 2008 U.S. Dist. LEXIS 27724, at *5, 2008 WL 928328, at *2 (M.D. Ala. Apr. 4, 2008) (holding that ALFA was a nominal party whose citizenship was not to be considered in the complete diversity analysis because ALFA "has elected to opt out of the litigation completely and to be bound by the verdict and judgment of liability and damages"). Because the citizenship of ALFA, an Alabama citizen, could be disregarded, complete diversity was created, as Plaintiffs are citizens of Alabama, Clark is a citizen of Mississippi, and Kinder Morgan is deemed a citizen of Texas.

On May 17, 2018, Clark and Kinder Morgan filed a notice of removal with this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1). Defendants assert the existence of diversity jurisdiction under 28 U.S.C. § 1332. In their notice, Defendants contend that this case did not become removable based on diversity of citizenship until the state court granted ALFA's motion to opt out on April 26, 2018. Defendants also allege that they first learned from Plaintiffs' responses to Kinder Morgan's requests for admissions on May 3, 2018, that Plaintiffs were seeking punitive

3

damages – as punitive damages were not mentioned in the complaint – and that Plaintiffs were unwilling to admit or deny that their damages are less than $75,000.[1] Defendants rely on the following to establish the requisite amount in controversy:

> a. the allegations in the Complaint, including the alleged severity of Plaintiffs' injuries;[2]
>
> b. the fact Plaintiff Evans has had to undergo [left shoulder arthroscopy] surgery;
>
> c. Plaintiff Evans' claim she is allegedly still unable to return to full time work;[3]
>
> d. Plaintiff Evans is seeking various types of damages, including punitive damages;
>
> e. Plaintiff Evans' refusal to admit she is seeking or has less than $75,000.00 in damages; and

---

[1] In response to a request to admit or deny that she was seeking damages less than $75,000, each Plaintiff asserted that the exact amount of Plaintiff's damages, if any, will be determined by a Choctaw County, Alabama jury and it is presently impossible to determine what they might award for damages in regards to compensatory damages, pain/suffering/mental anguish, and punitive damages. (Doc. 1-1 at 656-59).

[2] In her March 16, 2018, responses to interrogatories, Evans responded that her "neck, left shoulder, left arm, left elbow, left hip, and [her] whole body was made sore" from the accident, and that she "hurt all over." (Doc. 1-3 at 2).

[3] In Evans' February 27, 2018, responses to interrogatories, she stated that although she has not yet calculated her lost earnings, she was still unable to work full time. (Doc. 1-2 at 6). Additionally, although Evans reported that immediately before the collision, she was traveling at approximately 50 miles per hour, and that her van was a total loss from the accident, her lawsuit does not include a claim for property damage. (See id. at 4, 6; Doc. 1-1).

4

        f.    comparable cases in Choctaw County that yielded liability in excess of $75,000.

(Doc. 1 at 8). Defendants also state that they were covered by a $1 million liability insurance policy at the time of the accident and that the policy was produced to Plaintiffs during discovery in this case. (Id. at 4). Defendants contend that because Plaintiffs did not move to voluntarily dismiss State Farm and ALFA after receiving a copy of the insurance policy, "Plaintiffs must be seeking damages in excess of the policy limits of Defendants' policy, which well exceed the jurisdictional minimum." (Id. at 4-5).

On June 15, 2018, Evans filed the instant motion to remand this action to state court. (Doc. 6). In support of her motion to remand, Evans argues that Defendants have not met their burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000 and that they are asking the court to engage in speculation as to the value of her claims.[4] (Id.). According to Evans, it is "common practice" in Alabama for a plaintiff to sue her uninsured motorist carrier in an automobile accident case and keep the carrier in the case until all claims

---

[4] Plaintiff's only objection to removal is that Defendants have failed to establish the requisite amount in controversy. (Doc. 6). There is no dispute regarding the existence of complete diversity.

have been resolved. (Id. at 2). Evans asserts that the Court should draw no inference from the fact that uninsured/underinsured claims were asserted against ALFA and State Farm in this litigation. (Id.). Evans also contends that Plaintiffs' pursuit of punitive damages is not sufficient to satisfy the amount in controversy requirement and should not be considered. (Id.; Doc. 11 at 3). Evans further argues that the Court should not consider the two Choctaw County verdicts presented by Defendants in determining whether Defendants have met their burden to demonstrate that Evans' claims exceed $75,000 in value. (Doc. 6 at 2-3; Doc. 11 at 2-3).

The motion has been fully briefed and is now ripe for resolution.

**II. Standard of Review.**

As set forth above, this action was removed by Defendants pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1). Defendants, as the removing parties, bear the burden of demonstrating that federal jurisdiction exists. Kirkland v. Midland Mortg. Co., 243 F.3d 1277, 1281 n.5 (11th Cir. 2001); see also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010). Where, as here, defendants rely on diversity jurisdiction under § 1332(a) as the basis for removal, defendants must show both that the parties to the action are of diverse citizenship and that the amount in

6

controversy exceeds $75,000.  See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001).  In this case, Plaintiff does not dispute that the parties are of diverse citizenship. Therefore, the only jurisdictional question before the Court concerns whether the amount in controversy requirement has been satisfied.  See id.

"Where the plaintiff has not plead[ed] a specific amount of damages . . . the defendant is required to show . . . by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied." Kirkland, 243 F.3d at 1281 n.5; see also Pretka, 608 F.3d at 752 (quoting Williams, 269 F.3d at 1319); 28 U.S.C. § 1446(c)(2) ("If the removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a)," and other requirements are met, the preponderance standard applies).  "In some cases, this burden requires the removing defendant to provide additional evidence demonstrating that removal is proper." Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061 (11th Cir. 2010). However, in other cases, "it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when 'the complaint does not claim a specific amount of damages.'" Id. (quoting Pretka, 608 F.3d at 754).  In determining whether the amount in controversy requirement is met, the Court "focuses on how much is in controversy at the time of removal, not later."

Pretka, 608 F.3d at 751 (citations omitted); see also Poore v. American-Amicable Life Ins. Co. of Tex., 218 F.3d 1287, 1290-91 (11th Cir. 2000) (holding that "the district court must determine whether it had subject matter jurisdiction at the time of removal"), overruled on other grounds by Alvarez v. Uniroyal Tire Co., 508 F.3d 639, 640-41 (11th Cir. 2007); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 946 (11th Cir. 2000).

A court may find the jurisdictional threshold satisfied based on "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." Pretka, 608 F.3d at 754. Among the tools a court may employ are "judicial experience and common sense[.]" Roe, 613 F.3d at 1064. A court may not, however, speculate or guess as to the amount in controversy. See Pretka, 608 F.3d at 752. In considering the propriety of a removal, federal courts consistently caution that removal statutes must be strictly construed, with all doubts resolved in favor of remand. See, e.g., Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

### III. Analysis.

Defendants removed this action under 28 U.S.C. § 1446(b)(3). That subsection provides:

> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an

> amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). Under the statute, a case becomes removable on the basis of a defendant's receipt of such "a copy of an amended pleading, motion, order or other paper" upon the presence of three conditions:

> [T]here must be (1) "an amended pleading, motion, order or other paper," which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can "first ascertain" that federal jurisdiction exists.

Lowery v. Alabama Power Co., 483 F.3d 1184, 1213 n.63 (11th Cir. 2007) (quoting 28 U.S.C. § 1446(b)).[5]

> Courts have not articulated a single test for identifying "other paper," but numerous types of documents have been held to qualify. They include: responses to request for admissions, settlement offers, interrogatory responses, deposition testimony, demand letters, and email estimating damages.

Lowery, 483 F.3d at 1212 n.62 (citations omitted). In the instant case, Defendants identify the state court's order dated April 26, 2018, granting ALFA's motion to opt out, as well as Plaintiffs'

---

[5] Prior to the statute's revision in December 2011, § 1446(b) was divided into two paragraphs. The second paragraph of the statute, governing situations where the case stated by the initial pleading is not removable, is now the current § 1446(b)(3).

May 3, 2018, responses to requests for admissions, as the documents from which federal jurisdiction could first be ascertained. (Doc. 1 at 5).

"Generally, to satisfy the amount-in-controversy requirement at least one plaintiff's claim must independently meet the amount-in-controversy specification." Jackson v. Litton Loan Servicing, LP, 2010 U.S. Dist. LEXIS 82449, at *15, 2010 WL 3168117, at *6 (M.D. Ala. Aug. 10, 2010). See Exxon Mobil v. Allapattah Servs., Inc., 545 U.S. 546 (2005) (holding that where least one plaintiff meets the jurisdictional threshold, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over additional plaintiffs whose claims do not satisfy the amount in controversy requirement). Here, Defendants focus on Evans and argue that she is seeking damages in excess of $75,000.[6]

As noted *supra*, in support of removal, Defendants rely in part upon two prior Choctaw County cases that Defendants claim are "comparable" to the case at bar. Specifically, attached as an exhibit to Defendants' notice of removal are a complaint and an order of final judgment in the amount of $85,000 in Roberts v. Ruffin, Civil Action No. 10-900053, in the Circuit Court of Choctaw County, Alabama. (Doc. 1-4). Also attached to the notice of

---

[6] Defendants make no attempt to demonstrate that Ruffin seeks damages above the jurisdictional threshold.

10

removal as an exhibit is a verdict form awarding the plaintiff $175,000 in compensatory damages, along with a Westlaw verdict and settlement summary, in Hardge v. Johnson, Civil Action No. 03-009, in the Circuit Court of Choctaw County, Alabama. (Doc. 1-5). It is questionable whether such evidence may be considered in a case removed under § 1446(b)(3), as the court in Lowery expressly rejected the use of results of other cases as evidence of the amount in controversy in second paragraph removals because such information does not come from the plaintiff. See Musgrove v. Kellogg Brown & Root, LLC, 2013 U.S. Dist. LEXIS 61161, at *9, 2013 WL 1827583, at *3 (S.D. Ala. April 29, 2013). Assuming arguendo that such evidence could be considered by the Court, the undersigned finds that there is simply no objective, reasonable basis for the Court to draw a meaningful comparison between those earlier cases and the instant case.

In Roberts, the allegations in the complaint concerning the facts of the accident and the injuries sustained were so general that no meaningful comparison is possible. Indeed, there is simply no way for this Court to gauge the severity of the accident and the plaintiff's damages in Roberts or to make an informed comparison between that case and the instant lawsuit.[7] Further

---

[7] See Hill v. Toys "R" Us, Inc., 2010 U.S. Dist. LEXIS 100893, at *6, 2010 WL 3834532, at *2 (S.D. Ala. Sept. 24, 2010) ("Assuming without deciding that Lowery leaves the door open for a removing (Continued)

11

obscuring any comparison between the two cases is the fact that, unlike the instant case, Roberts included allegations regarding permanent injuries and a claim for property damage.[8]  Similarly, there is no reasonable basis for the Court to analogize Hardge to the instant case.  Even setting aside the issue of the reliability of information obtained from a commercial verdict and settlement summary, the brief factual synopsis in the summary is not sufficient to provide a meaningful comparison between the facts of Hardge and those in the instant case.  The Court is not permitted to engage in unwarrantable speculation as to the similarity of

---

defendant to rely on (or solely on) awards in other cases, the Court has been provided insufficient information to allow it to ascertain how similar this action is to those.  Without that showing of similarity, the other cases cannot support the inference that the amount in controversy here exceeds $75,000."); Vail v. Smarterfuel S., LLC, 2013 WL 5373525, at *10 (S.D. Ala. Sept. 25, 2013) ("Given the lack of a factual record before the Court, the undersigned cannot find that the above cases are sufficiently similar to show by a preponderance of the evidence that the claims of one of the plaintiffs . . . are more likely than not above the jurisdictional requirement. To make such a finding, the Court would have to rely on sheer speculation."); Jackson, 2010 U.S. Dist. LEXIS 82449, at *12, 2010 WL 3168117, at *5 ("[R]eliance on state court awards in purportedly similar cases is disfavored in this Circuit."); Nelson v. Whirlpool Corp., 668 F. Supp. 2d 1368, 1375 n.11 (S.D. Ala. 2009) (stating that "post-Lowery, the amount in controversy cannot be established by a review of jury verdicts in similar cases").

[8] Although, as noted, Evans asserted in her interrogatory responses that her van was totaled, the complaint does not include a claim for property damage or identify the year, make, or model of the vehicle.  Additionally, in her interrogatory responses, Evans stated that she does not know whether her injuries are permanent.

cases. Because the Court has insufficient information to determine the similarity between this action and the two Choctaw County cases relied upon by Defendants, those cases do not support the inference that the amount in controversy exceeds $75,000 in this case.

The Court next addresses Defendants' argument that Plaintiffs' failure to dismiss claims against State Farm and ALFA for uninsured or underinsured motorist benefits – founded on the allegation that Clark was an uninsured or underinsured motorist – despite allegedly having knowledge that Clark and Kinder Morgan have $1 million in liability insurance coverage for the accident, necessarily establishes that the amount in controversy exceeds $75,000. The undersigned finds Defendants' argument unpersuasive. Plaintiffs' election not to dismiss the uninsured motorist carriers after allegedly receiving discovery indicating Clark and Kinder Morgan have $1 million in liability coverage does not, as Defendants argue, lead to the inevitable conclusion that "Plaintiffs must be seeking damages in excess of the policy limits of Defendants' policy, which well exceed the jurisdictional minimum." On the contrary, there are a number of plausible reasons to keep the uninsured motorist carriers in the case. For example, Defendants' liability insurance may not be available if one or more defenses to coverage exist. Also, the policy might not provide coverage if evidence is adduced during litigation that Clark was not acting in the line and scope of his employment at

13

the time of the accident. "In short, plaintiffs' effort at hedging their bets is not an unambiguous statement of the damages sought." Wilson, 2011 U.S. Dist. LEXIS 40265, at *49, 2011 WL 1380052, at *15.

Defendants also point to the fact that in Evans' responses to Kinder Morgan's request for admissions, she did not admit or deny that she suffered or sought damages less than $75,000, exclusive of costs and interest, as evidence that the amount in controversy exceeds $75,000. However, the Court finds that Evans' failure to stipulate to an amount has little if any probative value for determining the amount in controversy. "There are several reasons why a plaintiff would not so stipulate . . . ." Williams, 269 F.3d at 1320. Evans provided valid responses that stated the reasons why she could not admit or deny the requests. See Jackson, 2010 U.S. Dist. LEXIS 82449, at *14, 2010 WL 3168117, at *5 (citing Ala. R. Civ. P. 36(a)). "[A] refusal to stipulate to an amount in controversy in [a discovery response] does not result in an admission regarding the amount in controversy." Id. (citing Harmon v. Wal-Mart Stores, Inc., 2009 U.S. Dist. LEXIS 21040, at *9-10, 2009 WL 707403, at *4 (M.D. Ala. 2009)).[9] Thus, Evans' responses

---

[9] See also Harmon, 2009 U.S. Dist. LEXIS 21040, at *12, 2009 WL 707403, at *4 ("Refusal to concede is not a statement of fact and cannot support jurisdiction. Therefore, while this paper is a proper item for consideration and was received from Plaintiff, its contents do not provide the clear and unambiguous statement
(Continued)

14

to Kinder Morgan's request for admissions do little if anything to establish that the amount in controversy exceeds $75,000.

Defendants further assert that the Court must consider Plaintiffs' allegations of wantonness by Clark and Kinder Morgan and their pursuit of punitive damages in determining whether the amount in controversy is met. "While a request for punitive damages does not automatically establish the amount-in-controversy, a court may properly consider punitive damages in the evaluation of whether a defendant has shown that the amount-in-controversy is satisfied." Hogan v. Mason, 2017 U.S. Dist. LEXIS 55055, at *9, 2017 WL 1331052, at *3 (N.D. Ala. Apr. 11, 2017). "But there is nothing talismanic about such a demand that would per se satisfy the amount-in-controversy requirement and trigger federal subject-matter jurisdiction." Lambeth v. Peterbilt Motors Co., 2012 U.S. Dist. LEXIS 67591, at *14-15, 2012 WL 1712692, at *4 (S.D. Ala. May 15, 2012).[10]  In the instant case, Plaintiffs

---

required to establish subject matter jurisdiction over this action."); Charleston v. Horsley, 2012 U.S. Dist. LEXIS 121346, 2012 WL 3726760 (S.D. Ala. Aug. 8, 2012), report and recommendation adopted, 2012 U.S. Dist. LEXIS 121345, 2012 WL 3705089 (S.D. Ala. Aug. 27, 2012) (finding denials of requests for admissions regarding the amount of damages sought by the plaintiff insufficient to establish the requisite amount in controversy).

[10] See also Earl v. Diebold, Inc., 2015 WL 789763, at *5 (S.D. Ala. Feb. 25, 2015) (concluding that plaintiff's "demand for both compensatory and punitive damages . . . [does] not render it facially apparent that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs") (footnotes (Continued)

15

assert that Defendants acted negligently or wantonly, and further assert that Clark was distracted immediately prior to the collision. These bare assertions do not suggest that Clark's alleged actions were or might have been so egregious or reprehensible to support a substantial punitive damages award.

In the end, the Court must determine whether Defendants have demonstrated, from the allegations in Plaintiffs' complaint, coupled with the details of Evans' injuries and damages contained in her interrogatory responses, along with her claim for punitive damages, that the amount in controversy exceeds the jurisdictional threshold. After reviewing this evidence, the undersigned finds

---

omitted); Scott v. Ford Motor Co., 2015 WL 505674, at *5 n.3 (S.D. Ala. Feb. 6, 2015) ("Although Plaintiff seeks punitive damages in this case, . . . the Court is not convinced that this proves that the amount in controversy exceeds $75,000."); Dean v. Sears, Roebuck and Co., 2014 U.S. Dist. LEXIS 29332, at *23, 2014 WL 900723, at *6 (S.D. Ala. Mar. 7, 2014) ("Here, the undersigned cannot estimate the value of the Plaintiff's punitive damages claims without engaging in pure speculation."); Musgrove, 2013 U.S. Dist. LEXIS 61161, at *17, 2013 WL 1827583, at *5 ("Not having been provided any estimate as to compensatory damages, the Court is ill-equipped to speculate as to any punitive damages award that a jury may award.") (citation omitted); Keach v. Poole, 2013 U.S. Dist. LEXIS 15329, at *8, 2013 WL 441082, at *3 (S.D. Ala. Feb. 5, 2013) ("Armory Mobile emphasizes that the complaint also demands punitive damages, but this is not particularly helpful absent a demonstration – as yet lacking – that substantial compensatory damages are in controversy and that the alleged conduct is sufficiently egregious to allow prediction that the amount of punitive damages in controversy is sufficient to make up the difference."); SUA Ins. Co. v. Classic Home Builders, LLC, 751 F. Supp. 2d 1245, 1255 (S.D. Ala. 2010) ("The Court is not free simply to assume . . . that the Whites are likely to be awarded substantial punitive damages . . . .").
(Continued)

that it is a close call, given Evans' disclosure that she incurred $26,081.94 in medical expenses, mostly in connection with her shoulder surgery, that she has incurred additional medical expenses and lost wages,[11] and that she is seeking damages for pain and suffering, mental anguish, and punitive damages. (See Doc. 1-2 at 6; Doc. 1-3 at 4). Defendants assert that multiplying Evans' current amount of disclosed medical expenses by two for pain, suffering, and mental anguish would push Evans' claim beyond the jurisdictional threshold, and that this calculation does not even consider lost wages, additional treatment, or punitive damages. However, Defendants provide no basis or authority for the Court to apply a multiplier to the quantifiable damages currently in evidence.[12]  Rather than base its determination on an arbitrary formula, the Court must delve into Evans' specific claims and,

---

[11] At the hearing on October 12, 2018, Evans' counsel indicated that before the accident, Evan was employed full-time and earning approximately $2,000 per month; however, aside from Evans' interrogatory response that she is no longer able to work full-time, her wage loss remains unknown.

[12] See Dean, 2014 U.S. Dist. LEXIS 29332, at *25 n.5, 2014 WL 900723, at *6 n.5 ("[T]he undersigned declines to evaluate the Plaintiff's punitive damages claim by applying a multiplier to the Plaintiff's compensatory damages.  Sears did not propose that the Court apply a multiplier, and such a maneuver would be particularly speculative based on the evidence presented in this case."); Mustafa v. Market St. Mortg. Corp., 840 F. Supp. 2d 1287, 1291 (M.D. Ala. 2012) (declining to apply a multiplier to plaintiff's $19,444.33 in compensatory damages when considering the plaintiff's mental anguish and punitive damages claims).

17

with judicial experience and common sense, ascertain the likely amount in controversy without engaging in speculation. The limited information before the Court concerning Evans' injuries and damages is not sufficiently specific and does not catalog harm that is severe enough on its face for the Court to find without speculating that Evans' pain and suffering and mental anguish claims, when considered in conjunction with Evans' special damages and punitive damages claim, surpass the jurisdictional threshold. While Evans underwent surgery for her shoulder, and incurred approximately $26,000 in related medical expenses, there is no assertion that her injuries were permanent, or that they involved scarring or disfigurement.  Accordingly, based on the complaint and the other information properly before the Court, the Court finds that Defendants have failed to demonstrate by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

### IV. Conclusion.

Based on the foregoing, the undersigned finds that the Court lacks subject matter jurisdiction over this case under 28 U.S.C. § 1332.  Accordingly, it is recommended that Plaintiff's motion to remand (Doc. 6) be GRANTED.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects

to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72(c).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **25th** day of **October, 2018.**

　　　　　　　　　　　　　　　　　　**/s/ SONJA F. BIVINS**
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**